May it please the Court, Sarah Carroll, on behalf of the government, I'd like to reserve five minutes for rebuttal. The Medicare system that Congress designed involves administrative and, if necessary, judicial review of individual decisions on individual claims for benefits. As the Supreme Court and this Court have emphasized, this scheme serves important purposes. For example, it allows the Department of Health and Human Services to apply its expertise to potentially complex and potentially individualized issues of medical necessity. It allows the agency to create an agency decision and compile an administrative record suitable for judicial review. And it also just helps to ensure the efficient and equitable management of this vast government benefits system. Nonetheless, in this case, plaintiffs seek prospective relief governing the future processing of their claims for Medicare reimbursement, and the District Court issued a preliminary injunction that precludes Medicare contractors from applying a particular local coverage determination, that is, a particular substantive standard for evaluating medical necessity, to Dr. Robert Odell's claims absent individualized medical records review. The District Court erred in numerous respects. First of all, plaintiffs cannot satisfy the requirements of 42 U.S.C. 405G, which is the sole potential basis for jurisdiction here. Most fundamentally, I think, Section 405G contemplates judicial review of decisions of the agency. It instructs courts to conduct review on the administrative record, to defer to the Secretary's factual findings, as long as they're supported by substantial evidence. But here, of course, plaintiffs do not ask the court to review any actual agency decision. So there's no administrative record to look at. There are no factual findings to defer to. Even putting that aside, the District Court failed altogether to address the non-waivable presentment requirement of Section 405G, which I think is where those issues map on the most closely. The District Court also erred in waiving the exhaustion requirement of Section 405G. Plaintiffs cannot demonstrate that their claims are wholly collateral to their entitlement to benefits, which is the standard that the Supreme Court applied in Ringer. To the contrary, if the court looks at the amended complaint, it's very clear that the whole purpose of this suit is to obtain reimbursement. Plaintiffs complain that they are denied reimbursement because the contractor applies the wrong LCD to their claims, and they seek prospective relief from application of the LCD because they want to be reimbursed in the future without having to go through the administrative process. But that is essentially the exact same thing that the plaintiffs in Ringer sought, and the Supreme Court said that that was insufficient to excuse them from the requirements of Section 405. Okay. Counsel, may I ask, how would it work in, you know, if you imagine a hypothetical where the contractor has some sort of animus against a particular provider, and so they just deny all of the claims from that provider. So the provider goes through the administrative appeal process, and he wins every time because there's no merit to the denials. And he wants to make a claim, you know, they keep denying my claims, forcing me to go through the expense of these administrative appeals. Is there any remedy in that kind of situation? I think the first remedy in that situation is, of course, the claims appeal system. A beneficiary would be able to seek something like a national coverage determination or a change to a local coverage determination, which could apply prospectively. Of course, Congress did not make that mechanism available to providers, but that's perhaps not surprising because it's beneficiaries who the system is supposed to serve. And I think on a more practical level, there are various things about how the system works that would serve as sort of a backstop against this. For example, HHS supervises and monitors its contractors, and if a contractor was routinely denying claims from a particular provider for some kind of ridiculous reason, I think HHS would notice that, and there could be some kind of recourse. To the extent that the claim in that case involved a local coverage determination, as the claim in this case does, it's also worth noting that the local coverage determination process involves extensive public participation before a local coverage determination can even be issued. So it's difficult to imagine an LCD getting through the process that really singled out one provider for mistreatment or something on a basis that was not legitimate. Could a provider make a claim to the agency described by Judge Miller? A provider in the claims processing process could say, this contractor is always denying my claims and that's wrong, and in reviewing denials of claims, the agency could evaluate that. And then I think if, for example, the provider got up to the appeals council and the appeals council said what the contractor is doing is really wrong, the provider, of course, could cite that appeals council decision in trying to get future claims reimbursed. But Congress did not provide a special route to procedural review like it did for beneficiaries. But the Supreme Court emphasized in Ringer that that is a feature, not a bug, of the system. That's what Congress designed to administer this complex scheme in a workable way. Council, the purpose of presentment, I guess I'm going back to the presentment issue, is to give the agency a chance to look at an issue, make a decision, fix something if something needs fixed before getting courts involved. That's what the case law says. It seems that Dr. O'Dell's issue here is he thinks that the wrong local rule or local coverage determination is being applied to a particular type of treatment that he renders to patients. And hasn't that issue been addressed? I mean, I'm struggling with that a little bit. If we say that Dr. O'Dell needs to do more to put his complaint in front of the agency, what more are we going to get from the agency than what we already have from past ALJ decisions? The court could get much more. So, for example, I understand from the contractor that Dr. O'Dell, I believe, has claims pending before the appeals council, the highest level of administrative review right now. And if the appeals council were to speak on the claims and if the appeals council were to rule against Dr. O'Dell, then he could go to court and there would be an authoritative decision of the Department of Health and Human Services, supported by an administrative record, that would allow the court to rule on the issues presented in a concrete way. Instead of here, where Dr. O'Dell cites kind of a laundry list of administrative decisions at lower levels that he thinks went his way, without much concrete for a court to look at. And I want to be clear that even if Dr. O'Dell properly channeled and exhausted one claim, that still would not entitle him to the prospective relief that he's seeking in this suit. This court's decision in Pacific Coast makes that really clear. There, a plaintiff claimed that HHS had wrongly computed its reimbursement for, I think, the 1973 cost reporting year. The district court and this court agreed that there had been an error. But the district court also enjoined HHS from essentially committing that error in the future. And this court said, no, that violates the presentment requirement. The court cannot grant relief with respect to future claims that haven't yet been presented to the agency. Because, for example, claims that might appear identical in law and fact to a court might not actually be identical. So HHS should have a chance to look at each of the claims and figure out. Your position is that for a provider like Dr. O'Dell, he's never going to have the ability to make a policy-wide challenge. That Congress just didn't provide for that, and his only path is claim by claim. Congress did not provide for that, that's true. I would note that there is, in fact, a beneficiary who is a plaintiff in this litigation. There's Kenneth Baker, who alleges that he has received the treatment from Dr. O'Dell. And nothing would stop Mr. Baker from pursuing this special procedural route that Congress created for beneficiaries. But the fact that Congress did not create a special procedural route for providers, of course, does not mean that Congress intended for providers to be able to circumvent the whole thing and go straight to court without properly channeling anything. Just to understand, so I'm clear, there's nothing Dr. O'Dell could have done for a presentment of his claim that the Medicare contractor kept applying and giving LCD to his treatment en masse that was wrong? He certainly, in presenting individual claims for reimbursement to the agency, he could say that the wrong LCD is being applied. And in fact, we know that he has been making that argument in the administrative process. But there's no presentment procedure for him to come in and say, they're doing this every time, let's stop it. He has to go to each individual claim? That is the scheme that Congress devised. And the D.C. Circuit in Porzakansky recently affirmed that. I think Porzakansky is a very persuasive decision. This case is in many ways an easier case for the government because in Porzakansky, the plaintiff had properly channeled and exhausted at least one claim. But the D.C. Circuit said, yes, plaintiff, even though you have monthly claims for reimbursement of this treatment that you say are being wrongly denied at the initial level and you have to administratively appeal every single one, Congress did not intend for a decision on one claim to sort of allow for the decision of all future claims. The D.C. Circuit... I want to ask another follow-up on that because this case has a bit of a wrinkle on that issue. So I think you're saying that prospective claims, things that haven't happened yet, treatment that hasn't been rendered yet, claims that haven't been submitted yet, we can't have prospective rulings on. But what's going on with Dr. O'Dell, my understanding is, is that the billing review contractor, for lack of a better term, is doing a retroactive, like looking back at payments that have already been made and trying to claw back money, saying that it was wrongly paid. So we're not just talking about future claims. So how does your argument work in that context? I mean, is it still that every single time the contractor wants to go back in time and take money that was already, or, you know, retrieve money that was already paid out, he needs to challenge that claim by claim too? That is our position. Certainly the preliminary injunction both precludes the contractor going forward from applying the local coverage determination to claims even that have not been presented yet. But I understand what Your Honor is saying, that there are also claims that are already in the pipeline. For claims that are already in the pipeline, the same claim-by-claim process that Congress established applies. And at minimum, I think even if there could be questions on the margin about whether Dr. O'Dell might satisfy the presentment requirement with respect to those claims, he certainly has not demonstrated that he is entitled to avoid the exhaustion requirement and simply come straight to court without having sought any kind of administrative review of those claims. The district court, as I mentioned earlier, erred in finding this claim to be wholly collateral from his entitlement to reimbursement. To the contrary, just as in Ringer, he is trying to get this prospective relief so that he can get reimbursed without having to go through administrative appeals. He also has not shown irreparable injury other than the delay-related hardships that Congress recognized many participants in the Medicare system might experience. And administrative exhaustion also would not be futile, both in the sense that he can get relief through the administrative process and in the broader sense this court has emphasized, which is that exhaustion here would certainly promote Congress's purposes by giving the agency an opportunity to apply its expertise to the potentially very individualized issues that claims present. You know, each patient is different. Each patient may have different needs, different symptoms. So it's not at all clear that it's even appropriate to be thinking about this on a categorical basis. It seems the problem with that point that you've just made is that the denials aren't happening on any individualized basis, right? They're not looking at this patient in particular saying, we don't think that treatment was needed or we think that treatment was applied inappropriately. It seems to be that they're just looking at this and saying, we think rule one applies and the doctor is saying rule two applies and nobody is really doing much of an individualized analysis at that point. I think that number one, it's not clear, especially given the strange way in which plaintiffs have brought this suit, it's not actually clear what is going on. And certainly the question of which LCD applies to a given claim could be very individualized depending on the patient. But in any event, this is just like the policy that was at issue in Ringer, where the plaintiffs claimed that unlawful HHS action was causing their claims to be denied at the first level of administrative review and that they were being sort of improperly forced to appeal to ALJs who were then granting their claims. And the Supreme Court said that that was not a basis to excuse 405G. There was also kind of an across-the-board policy. So even if you think there is one here, plaintiffs still have to comply with 405G. I understand that I've gone over the ten minutes I intended to use, so I would be happy to reserve the little time I have for rebuttal unless the Court has further questions. Okay. We'll give you a couple of minutes for rebuttal. Thank you, Your Honor. Mr. Brewer. Thank you, Your Honors. May it please the Court and good morning. George Brewer, on behalf of Dr. O'Dell, has practiced medical enterprises and the Medicare beneficiary, Mr. Kenneth Baker. The Court accurately and properly set forth, we believe, a finding of subject matter jurisdiction under 42 U.S.C. 405G. And the requirements that are set forth under there, we believe, were met as well. And I'm going to take the jurisdictional argument first, if I may, and proceed on with the motion for the preliminary injunction that was granted. There are several points at which both interact, I would say. We have proceeded, or I should say Dr. O'Dell has proceeded for many years through the administrative process. And it is safe to say, and it's pled below, that the treatment that he was rendering is nearly identical. The process he was rendering is nearly identical. And in this case, the LCD that was being misapplied, and aside from the one that we argued was applicable, really was completely irrelevant to this treatment. Even the ICD-9 codes that Dr. O'Dell put forth and provided on his billing, they weren't even triggered by this particular LCD. So it was somewhat of a mystery to Dr. O'Dell why this LCD was being applied over and over and over again in a retroactive way. Can I ask you sort of the 10,000-foot question here? Please. Do you disagree that Congress could, whether it makes sense or not, set up a system where somebody in your client's position has to just make their arguments claim by claim as opposed to a broader argument that he's trying to make? Does Congress have the power to do that? I believe in this instance, the way that this case is played out, there is no remedy other than a piecemeal in the administrative system. However, we've gone all the way up to the Medicare Appeals Council, the very highest level of decision-making. They in turn self-referred this case and a similar case, an ALJ opinion twice to themselves, and asked the ALJ to further expand on why this particular LCD has been taken off the shelf and applied retroactively to Dr. O'Dell. And the ALJ in three separate opinions met that burden and told them why. Counsel, I'm not sure that really answers the question. The question is, just as a general matter, could Congress create a scheme where every claim has to be presented individually? I mean, you're not making a constitutional challenge here to the authority of Congress to create such a scheme, are you? No, we've not made a constitutional claim or argument against the process itself. That's correct. We understand and we have participated in the process. What is being really approached here and being contested below and throughout here is an unwritten policy, an unwritten rule, that itself violates the Social Security Medicare Act. It violates the Administrative Procedures Act. And by applying an unwritten rule over and over again, that becomes really the issue below. I want to make sure I understand what it is you're calling the unwritten rule. The unwritten rule is the best way that we could describe what was taking place at the contractor level. Why is this completely irrelevant local coverage determination being taken off the shelf and applied to a process to the services that were rendered when it has absolutely no relevance to it? It was irrational. It was being applied irrationally. How does that get you past the presentment problem you've got, though? Because we have presented, we are presenting, and we're currently continuing to present. We have many claims pending throughout the system. But more importantly, I think the original claims that made it up all the way to the Medicare Appeals Council level was directly on point in this issue. I'm sorry. Those were individual claims, but there wasn't a challenge to the unwritten rule you're challenging now, though, was there? And the District Court Judge Bolwer pointed that out in his opinion. There is no mechanism whatsoever by which you can challenge the unwritten policy of taking an irrelevant LCD off the shelf and applying it. We're going to challenge that in the context of an individual claim. You could make the argument in your administrative appeal, they applied this unwritten rule, they shouldn't have, it was wrong, and then you can get up to the Appeals Council and they can issue a presidential decision that says stop applying this unwritten rule. Why isn't that available? Because as pointed out by the judge below, there is no mechanism by which to bring that claim within the context of the appellate process or Medicare appeals process for each individual claim. So, in effect, what we did is we – Doesn't that answer your question, then, that you can't get this presentment issue resolved? It has to be done individually? Doesn't that answer the question? Well, we also – at this point, I believe we've gotten a determination by the Medicare Appeals Council and the ALJ, we just don't have a contractor who will abide by that determination. So, if your point is that a Medicare contractor can do whatever they want to do or do it irrationally on each basis, we don't believe that's the case. And we believe that we've satisfied the further waiver of administrative appeals and satisfied the requirements for waiver as set forth below and through BOA and set forth in the various case laws that are cited herein. We've satisfied the requirements for further exhaustion of the administrative remedies. What are you – you're arguing waiver for the presentment issue, too? Is that your argument? No, we're arguing waiver for any further presentment. We believe we presented it all the way up to the highest level of the Medicare appeals process. The unfortunate aspect is that you can't appeal a win. If we win continuously up through, we can't get to the district court in the traditional fashion in which you do that. And I believe that was – you know, I can't speak for the minds that were working at the time, but when the Medicare Appeals Council took this under consideration on a self-referral, they finally accepted the reasoning of the ALJY and below and did no longer self-referred it and no longer appealed it. So we were left with a win in the appellate court. We simply – in the appellate division, I should say, of the administrative process. But we could never get the contractor to appreciate that win. And, in fact, when we took the jurisdictional discovery that was permitted by the district court below, they were very blatant in saying, we don't care how many wins you get. We're going to do it with whatever we want to do. And so we were left with absolutely no mechanism. We were certainly left where further administrative review was futile. And I think that's what we're talking about. So, I mean, I've gone back in the record and reviewed the decisions that you've received, both from ALJs and from the appeals council. And it seems that most of them are couched in looking at the specific case, the specific claim that's being challenged. Because they talk about the patient and the specific treatment. What is your best evidence in the record that you've made a sort of more general argument as opposed to a specific argument related to a specific claim? Or even that the agency has considered it on a more general basis as opposed to on the basis of looking at a particular patient's case. And I think that's answered by looking at the ALJ decision rendered by ALJ Wein that was cited by Judge Boulware below. In that case, although yes, it was a case in which the reasonableness and necessity of medical treatment might've been decided, but the underlying threshold issue of whether or not that LCD had anything to do with the treatment was answered by ALJ Wein. That was the issue that was taken up to the Medicare appeals council on their own self-referral twice. The very same issue we're talking about. And that is the, what is this LCD being doing? What is it? Why are they applying it to the treatment? And that precise issue was dealt with more so than the remaining aspects of medical necessity. And in fact, the preliminary injunction entered by Judge Boulware below in no way interferes with the decision-making of the agency on a prospective basis as suggested by counsel to the secretary. It merely says you may not engage in the mechanical application of this particular LCD without a claims review process on this basis because they recognized for the reasons stated within the order that Dr. Odell had been up on appeal. This issue had been decided at the Medicare appeals council level, or at least they had on self-referral chosen not to do it a third time and allow Judge Wein's opinion to remain. But that decision. Could you address the DC circuit decision in Porsakansky? Because it, that seems to say that just because you presented one claim doesn't mean you can come to court and get a more general injunction relating to the processing of other claims. So what, why should we not follow that cure? Well, these also keep in mind what was said before the perspective versus retroactive process. And these claims are processes more talking about auditing. But we're talking about the irrelevant application of simply an LCD. We're not asking for, and the court below did not grant a preliminary injunction that anyone interfered with the agency's ability to review claims and determine what whether or not those claims should be paid. And not at all. Did we go into medical necessity or reasonableness? Those issues were not touched whatsoever. We simply didn't want the mechanical application of an LCD that had absolutely no relevance to the process. So we believe judge bowl, where's preliminary injunction that he drafted and granted was very limited. And he was very careful not to infringe upon the agency's decision-making process. We also don't have any mechanism, nor would we want to engage in any challenge to the LCD. They're applying. We don't take issue with the LCD. They're applying. It really just had no relevance to the, what Jeff, what Dr. Odell was doing. And when we went to some limited subject matter, discovery on that and spoke to the medical director for Noridian, Dr. Gary Oakes. He was simply very flippant that he really didn't care that this was being picked up. It was going to continue to be applied and whatever the decisions above granted, he was not going to do anything about. So we really ran into a futile situation. I have a question about that. Is there any scenario where your client thinks that LCD 71 should apply to the treatment that we've let that issue in this case? No. In fact, you know, I was, you can go into the basic reading of both of these LCDs and Dr. Odell was in no way engaging in any of the services rendered under that LCD. And typically the way these LCDs are applied by the agency on a, on a mass scale is they're triggered by the ICD nine codes that are set forth in the billing itself. So it was truly a mystery throughout the process why this LCD was even being applied because the ICD nine codes that were billed were found under the other one, not this one. And if that answers your question, I don't know that that's clear from the pleadings in the case. I mean, which is why I asked, it wasn't clear to me whether your client wanted the agency to make a more individualized determination before deciding which rule to apply, because there's a possibility that rule 71 might apply sometimes, or whether you were making a blanket 71 should never apply when we're talking about Dr. Odell's treatment. That's correct. Your honor. I mean, we, this is, I think to answer the question is 271 simply has nothing to do with his treatment. We never understood why they were taking it off the shelf and applying it to his treatment in a sense. So one of the problems that's inherent in the system is that it's a red herring to suggest that we would in any way try to challenge that LCD. We're not concerned with its content or its validity or what it tries to say. Our only point is that it's being misapplied and we don't know why it's being misapplied. And we don't know why it's continuously misapplied. Even after going through the fullest and highest levels of the administrative appeal process. Um, we don't Dr. Odell simply is not, if that answers your question, um, we have no problem with that LCD. And in fact, um, once again, we just were asking that it not be mechanically applied, uh, to all claims processed, uh, any longer. It was just to the point where we thought we'd have these answers, uh, questions answered and the contractor simply wasn't compliant. Um, I mean, but the fundamental problem I'm still struggling with is, I mean, you can say, you know, we're just objecting to the application of the LCD. Um, I mean, you're making a procedural challenge to how the agency processes your claims. And what I, I, I have trouble seeing is what the jurisdictional authority is for considering such a challenge outside of the context of an individual claim. This has been presented to the agency, uh, under and appealed under four or five. Um, so what, what, what is the authority that allows you to do that? Under four or five G we're allowed to waive any further exhaustion of the remedies. In other words, exhaustion, but not presentment, but the presentment has taken place. We've already presented these claims and they've been ruled and taken up to the highest level of the Medicare appeals council. Traditionally, it's only if they disagree with us that we would then have the ability to take this further into district court. Well, what happens when you're left with a win? What happens when you perpetually win? At what point does it become arbitrary and capricious below with the contractor failing to comply? Well, does that give you jurisdiction though, simply because you feel like the contractor has been arbitrary and capricious. I believe if they're, in essence created an unwritten policy and failed to comply with the requirements of that policy under 1395 of 40 of title 42, they're required to promulgate these policies in writing. You can't do it in an arbitrary, capricious fashion. And I don't believe that you can do it in an unwritten policy, but that doesn't give you jurisdiction though. You still have a presentment issue.  I believe that we've in this case, we've satisfied the presentment issue by taking it all the way up to the Medicare appeals council. So if the council is satisfied with that reasoning and the contractor refuses to comply, otherwise we're left with no remedy whatsoever. Well, what you've done is you've challenged individual claims that used an LCD that you think is inappropriate and you've won on those, but there hasn't been a claim made where you've challenged the use of the LCD in mass. I'm saying that they simply can't apply it in any case. Have you? We believe that's part of the wine decision. I think the wine decision itself outlines duplicability of the LCD and it's, and it's, well I should say it's inapplicability it's irrelevance to this proceeding. And, and again, well that issue we felt was very clearly dealt with and that series of appeals that went up through the council. So the wine decision is the, is the case where you took it all the way up through the process where your presentment obligation has been met, which gives us jurisdiction. We believe so. Your honor, that's correct. I mean, in essence that satisfies the presentment requirement and that the Medicare appeals council, the highest level has had the opportunity to rule on the same. We're stuck in a limbo situation where the contractor wouldn't abide by the rationale. We understand that. Okay. Thank you. Counsel. Thank you. Ms. Carol, two minutes. Thank you, your honor. Just a few quick points. First plaintiffs confirmed that they have no constitutional objection to the, the scheme that Congress created. That is the scheme as it exists and there's no basis for this court to depart from it. A second plaintiff say that they're complaining about an unwritten rule governing the processing of their Medicare reimbursement claims, but what they're really complaining about is just the way that their claims are, are considered for reimbursement. This court said in kill there that a plaintiff can't just, you know, stick the name policy on a reimbursement dispute and thereby circumvent section four or five G. And indeed, I suspect that there are probably a lot of Medicare providers and patients out there who may prefer to have, you know, more certainty about in advance about the reimbursability of their, their, their services. And, you know, would like an advance some kind of advanced ruling from a court about that. But of course, the ringer said that that is not allowed and plaintiffs here should not be allowed to get around that. Third. Counsel, can you address your co-counsel or your colleagues point that ALJ weans decision is enough. But that was a more generalized decision, not looking at one patient's specific case. Why isn't that enough to say that the agencies had a chance to address this? Sure. A couple of responses to that. First, of course, plaintiffs are not seeking review of that decision, which is what section four or five G requires. He also plaintiffs rely heavily on the ALJ statement that the contractor is erring by continuing to apply the LCD. He dislikes, even though he and I think one other ALJ and perhaps some qualified independent contractors have applied a different LCD, but the appeals council in that same proceeding made clear that that was not a good argument because ALJ decisions and QIC decisions are not precedential. As, as you, as you pointed out your honor these, these evaluations of claims are individualized. They focus on the specific circumstances that patients face. And that is, I think because of the nature of the scheme where, where HHS for each claim is making inherently individualized medical judgments. But the argument he just made is that the wine decision isn't individualized. It's a general decision. I don't think that's, I don't think that's a correct characterization. I think ALJ wine was saying these, I believe 15 claims. Actually, I think ALJ wine said these, I think 12 or 13 claims should be reimbursed, should be considered under the LCD that plaintiffs like here are a couple of claims that should not be reimbursed. Of course, plaintiffs could have appealed those to the Medicare appeals council, but they did not do so. But the ALJ didn't have authority to declare more broadly in this claims process and context, which LCD applies. And again, his decision is not precedential. So there is nothing unlawful or nefarious or improper about the contractor continuing to process Dr. Odell's claims in the ways that it has. Thank you. Thank you, counsel, unless either of my colleagues have further questions, I think we have your position. Thank you. Thank you. We thank both counsel for their helpful arguments this morning and the case is submitted. Thank you.
judges: Miller, Hunsaker, Rayes